IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| DARRELL HOBBS, on behalf of himself and others similarly situated, | ) ) ) | |
| Plaintiff | ) | Civil Action No. _____ |
| | ) | |
| v. | ) ) | COMPLAINT AND JURY TRIAL DEMAND |
| CABLE MARKETING AND INSTALLATION OF LOUISIANA, INC. a Louisiana corporation; and CABLE MARKETING & INSTALLATIONS, INC., a Mississippi corporation, | ) ) ) ) ) ) | COLLECTIVE ACTION |
| Defendants. | ) ) | |

Plaintiff Darrell Hobbs, on behalf of himself and others similarly situated, alleges as follows:

## THE PARTIES

1.       Darrell Hobbs is an individual of the full age of majority and a resident of St. Tammany Parish, Louisiana.

2.       Defendant Cable Marketing and Installation of Louisiana, Inc., is a Louisiana corporation with its principal office address within this state at 131 Industrial Drive, Suite G, Slidell, St. Tammany Parish, Louisiana.

3       Defendant Cable Marketing & Installations, Inc., is a Mississippi corporation with its principal place of business at 10216 3rd Ave., Suite D, D'Iberville, Harrison County, Mississippi.

4.       Defendants operate a business specializing in the installation and repair of telecommunications equipment.

5.       Defendants operate under the trade name "CMI."

6. Defendants operate under a contract with Charter Communications, Inc. ("Charter") to provide installation and repair services for Charter customers.

7. On information and belief, Defendants operate, or have operated, under contracts with other cable providers to provide installation and repair services for the customers of those providers.

## JURISDICTION AND VENUE

8. This Complaint is brought pursuant to the Fair Labor Standards Act ("FLSA"). This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331. This Court has pendent jurisdiction over the state law claim pursuant to 28 U.S.C. § 1367.

9. Plaintiff Darrell Hobbs primarily performed work for Defendants in St. Tammany Parish and Tangipahoa Parish. This Court is the appropriate venue for this action. 28 U.S.C. § 1391(b).

10. Defendants do a substantial amount of business within this District.

11. Defendants are engaged in commerce pursuant to 29 U.S.C. § 206(s).

12. Defendants' annual volume of sales made and business done has exceeded $500,000 during each of the past three years.

13. Defendants have a common business purpose, and there is a unified operation and common control over their telecommunications repair and installation business.

14. Brandon Gary is the President of both Defendants.

15. Alex Eleuterius is the Secretary and Treasurer of both Defendants.

16. The Defendants share the same directors and officers.

17. On information and belief, the Defendants share the same ownership.

18. Defendants operate under common corporate policies and procedures.

19. Defendants qualify as an enterprise pursuant to 29 U.S.C. § 203(r).

## FACTUAL ALLEGATIONS

20. Plaintiff began working for Defendants in December 2016, and resigned in April 2017.

21.     Plaintiff's job duties included the installation and repair of telephone, internet, and cable television equipment for Charter customers.

22.     Plaintiff's work vehicle was marked with the CMI logo.

23.     Plaintiff's uniform shirt was marked with the CMI logo.

24.     Plaintiff was required to wear an identification badge which states "Cable Marketing and Installation of LA, Inc. (CMI)."

25.     Plaintiff was required to work Monday-Saturday.

26.     Plaintiff was expected to, and did, work up to 72 hours in a workweek.

27.     Defendants required Plaintiff, and all other cable installers/repairmen, to install an app called "CSG TechNet" on their personal cell phones.

28.     Defendants exercised close control over Plaintiff's work schedule through this app.

29.     Plaintiff was required to log in to the app at 7 am and was not permitted to log out of the app before 7 pm.

30.     If Plaintiff was in the middle of a job at 7 pm, he often worked late to complete it. Plaintiff sometimes worked until 10 pm, or later, to complete all the jobs he was assigned.

31.     Defendants used the app to schedule Plaintiff's workday and to inform Plaintiff of the next job assignment.

32.     Plaintiff did not choose his clients, or have the ability to accept or reject jobs. Defendants decide which worker to send to a particular job, and tell the workers what jobs to perform in what order.

33.     Plaintiff was paid by a piece rate. Defendants set a certain value to every type of job, and Plaintiff and the other installers/repairmen receive that set amount no matter how much time it actually takes to complete any particular job.

34.     While the FLSA permits employers to pay employees via piece rate, they must

nonetheless be paid an overtime premium for hours worked over 40 in a workweek. 29 C.F.R. § 778.111.

35.     Plaintiff did not receive an overtime premium for hours worked over 40 in a workweek.

36.     Defendants claim that Plaintiff, and other cable installers/repairmen, are independent contractors.

37.     Despite this purported independent contractor designation, Defendants qualify as Plaintiff's "employer" pursuant to 29 U.S.C. § 203(d), and Plaintiff qualifies as Defendant's "employee" pursuant to 29 U.S.C. § 203(e). Defendants have willfully and intentionally misclassified cable installers/repairmen as independent contractors in violation of the FLSA and Louisiana state law.

38.     Plaintiff and other cable installers/repairmen perform services essential to the fundamental business purpose of Defendants.

39.     Plaintiff and other cable installers/repairmen have no control over the manner and method by which they are paid. The piece rates are set by Defendants unilaterally, and are not negotiable.

40.     Plaintiff and other cable installers/repairmen are hired on an indefinite basis, and there is no set end date to their working relationship. Defendants reserve the right to terminate Plaintiff and other cable installers/repairmen on an at-will basis.

41.     Plaintiff and other cable installers/repairmen worked solely for Defendants on a full-time and continuing basis. Indeed, because of the hours of work which Defendants required, it would be effectively impossible for them to perform outside work.

42.     Plaintiff does not operate his own individual economic enterprise.

43.     Plaintiff does not do business as a corporation, LLC, or other form of juridical person.

44.     Plaintiff has not entered into a written contract with Defendants.

45.     Plaintiff does not advertise his services to the general public or to other cable companies.

46.     Defendants' monetary investment in the telecommunications installation and repair business far outweighs any investment made by the cable installers/repairmen.

47.     Defendants require cable installers/repairmen to wear uniforms displaying the CMI logo.

48.     Defendants require cable installers/repairmen to drive work vehicles displaying the CMI logo.

49.     Defendants control the days of work of the cable installers/repairmen.

50.     Defendants control the hours of work of the cable installers/repairmen.

51.     Defendants require cable installers/repairmen to follow CMI policies and procedures in performing their daily job duties.

52.     Defendants require cable installers/repairmen to complete and submit daily log sheets to CMI.

53.     Defendants require new hires to undergo training, including classroom time and in-field training where they ride along with a current CMI cable installer/repairman.

54.     Defendants inspect the work performed by the cable installers/repairmen.

55.     Defendants provide and pay for equipment such as modems, wire, and cable boxes.

56.     Defendants also provide personal protective equipment (PPE), signal meters, leakage meters, and other tools to the cable installers/repairmen.

57.     Defendants deduct "back charges" from cable installers/repairmen when a customer calls CMI or Charter, for any reason, within 7 days of the most recent service call.

58.     Defendants impose back charges as a matter of course, even if there is no evidence that the installer/repairman did anything wrong.

59.     Because the back charges may equal or exceed the piece rate value of the particular service provided, Plaintiff and other cable installers/repairmen sometimes perform work for free.

60.     Due to back charges, the weekly wages for Plaintiff and other cable installers/repairmen

sometimes drops beneath minimum wage.

61.    The contract between Defendants and Charter obligates Defendants to exercise close control and supervision over the work performed by Plaintiff and other cable installers/repairmen.

62.    On information and belief, Charter regularly checks to ensure that Defendants are complying with the terms of that contract.

63.    On information and belief, Defendants have entered into contracts with other telecommunications providers, which likewise obligate Defendants to exercise close control and supervision over the work performed by the cable installers/repairmen.

64.    Plaintiff resigned from his position with CMI when his most recent weekly paycheck was less than $300 (including back charges), despite having worked six full 12-hour days.

65.    When CMI was informed of Plaintiff's resignation, it refused to provide him with his final paycheck. Plaintiff has demanded his final paycheck, but still has not been paid.

## COLLECTIVE ACTION CLAIMS

66.    Plaintiff brings this complaint as a collective action pursuant to 29 U.S.C. § 216(b) on behalf of himself and all other current and former similarly situated cable installers/repairmen who worked for Defendants within three years of the date of filing this lawsuit.

67.    Defendants classify all cable installers/repairmen as independent contractors, and do not pay them overtime premiums.

68.    This enterprise-wide misclassification constitutes a common practice, policy, or plan in violation of the FLSA.

69.    The collective is hereby defined as:

> All individuals currently or formerly employed by Cable Marketing and Installation of Louisiana, Inc., or Cable Marketing & Installations, Inc. as cable installers/repairmen at any time within the three years prior to the filing of this Complaint, and up to and including the date of judgment in this action, and who who were classified as independent contractors.

70.     Defendants' failure to pay statutorily mandated overtime pay to the members of the collective constitutes a common practice, policy, or plan to deny overtime in violation of the FLSA.

71.     Defendants' failure to pay statutorily mandated minimum wage pay to the members of the collective constitutes a common practice, policy, or plan in violation of the FLSA.

72.     Plaintiff is similarly situated to the remaining members of the collective in that they perform the same job duties and are all denied overtime despite working more than 40 hours in a week.

73.     Because of their status as purported independent contractors, Plaintiff and the members of the collectives were also improperly denied benefits which were offered to Defendants' employees.

74.     Plaintiff requests that, at the soonest practicable time, the Court order that notice be given to the members of the collective so that they may exercise their right to opt in to this action.

## FIRST CAUSE OF ACTION

## FAILURE TO PAY OVERTIME (29 U.S.C. § 207)

75.     Plaintiff hereby realleges and reincorporates paragraphs 1-74.

76.     The FLSA requires that employers pay nonexempt employees at a rate of at least one and one-half times their regular rate for all hours over forty in a workweek.

77.     Defendants have never paid Plaintiff an overtime premium for hours worked over forty in a workweek.

78.     Defendants have never paid the remaining members of the collective an overtime premium for hours worked over forty in a workweek.

79.     Defendants have actual and constructive knowledge that Plaintiff and the remaining members of the collective regularly work more than forty hours in a workweek.

80.     Despite this knowledge, Defendants do not track the hours worked by Plaintiff and the remaining members of the collective as required by law.

81. Defendants' nonpayment of overtime was willful and not based in a good faith belief that their conduct was in accordance with the law.

82. Defendants have failed to keep full employment records required by the FLSA. *See* 29 C.F.R. § 516.1 *et seq.*

83. Plaintiff and the other members of the collective have therefore suffered damages in an amount to be proven at trial.

## SECOND CAUSE OF ACTION

## FAILURE TO PAY MINIMUM WAGE (29 U.S.C. § 206)

84. Plaintiff hereby realleges and reincorporates paragraphs 1-83.

85. The FLSA requires that employers pay employees a minimum wage of at least $7.25 an hour.

86. As a result of back charges and piece rates that do not accurately reflect the amount of time it takes to complete certain jobs, the cable installers/repairmen are sometimes paid less than the minimum wage.

87. Defendants had actual and constructive knowledge that Plaintiff and the remaining members of the collective have worked for less than minimum wage.

88. Plaintiff and the other members of the collective have therefore suffered damages in an amount to be proven at trial.

## THIRD CAUSE OF ACTION

## UNLAWFUL FINES (LA. REV. STAT. § 23:635)

89. Plaintiff hereby realleges and reincorporates paragraphs 1-88.

90. Plaintiff and the other members of the collective are subject to back charges at Defendants' sole discretion.

91. La. Rev. Stat. § 23:635 states the imposition of fines against employees is unlawful,

unless the employee willfully or negligently damages the employer's goods, willfully or negligently damages or breaks the employer's property, or if the employee is convicted or has pled guilty to the crime of theft of employer funds.

92. Defendants' back charges do not fit into any of the narrow exceptions of La. Rev. Stat. § 23:635 and therefore constitute unlawful fines under Louisiana law.

93. Plaintiff and the other members of the collective have therefore suffered damages in an amount to be proven at trial.

94. Plaintiff hereby requests a trial by jury.


**WHEREFORE**, Plaintiff and the members of the collective respectfully pray for judgment as follows:

   a.   That this case be allowed to proceed as a collective action;

   b.   For an award of all unpaid wages, minimum wages, and overtime according to proof;

   c.   For an award of liquidated damages pursuant to 29 U.S.C. § 216(b);

   d.   For an award of all benefits of employment which were wrongfully denied to Plaintiff and the members of the collective as a result of the misclassification as independent contractors;

   e.   For an award of all back charges imposed in violation of La. Rev. Stat. § 23:635;

   f.   For an award of reasonable attorney's fees;

   g.   For costs of suit;

   h.   For injunctive and equitable relief as provided by law;

   i.   For pre and post-judgment interest; and

   j.   For such other and further relief as may be just and proper.

Respectfully Submitted,

Charles J. Stiegler #33456 (TA)
STIEGLER LAW FIRM LLC
6557 West End Blvd.
New Orleans, La. 70124
(504) 267-0777 (telephone)
(504) 513-3084 (fax)
Charles@StieglerLawFirm.com