UNITED STATES DISTRICT COURT
                     EASTERN DISTRICT OF LOUISIANA

DARRELL HOBBS                                          CIVIL ACTION
*On behalf of himself and*
*others similarly situated*

VERSUS                                                 NO. 17-4766

CABLE MARKETING & INSTALLATION                         SECTION "B"(2)
OF LOUISIANA, INC., ET AL

                        <u>ORDER AND REASONS</u>

    Plaintiff filed a "Motion for Conditional Certification and Court-Supervised Notice" for his claims under the Fair Labor Standards Act (FLSA). Rec. Doc. 17. Defendants timely filed an opposition. Rec. Doc. 20. Plaintiff then sought, and was granted, leave to file a reply. *See* Rec. Doc. 24. For the reasons discussed below,

    **IT IS ORDERED** that the motion (Rec. Doc. 17) is **GRANTED IN PART** and **DENIED IN PART**.

    **IT IS FURTHER ORDERED** that Plaintiff's request to conditionally certify a collective action under the FLSA is **GRANTED**.

    **IT IS FURTHER ORDERED** that the collective is defined as "All individuals who provided cable repair and installation services for Cable Marketing and Installation of Louisiana, Inc. or Cable Marketing & Installations, Inc. at any time since February 6, 2015, and who were classified as independent contractors."

                                   1

**IT IS FURTHER ORDERED** that the parties file into the record, **no later than Wednesday, February 21, 2018**, (1) a copy of the proposed notice, (2) a copy of the proposed abbreviated text message notice, and (3) any objections thereto.

**IT IS FURTHER ORDERED** that Defendants provide to Plaintiff's counsel, **no later than Thursday, March 8, 2018**, a list of the names, addresses, telephone numbers, e-mail addresses, and dates of employment for individuals who fall within the definition of the collective. The list shall be in an electronic format accessible to Plaintiff's counsel.

**IT IS FURTHER ORDERED** that the opt-in period for potential plaintiffs is sixty (60) days, beginning for the collective on the date when Defendants provide the list of contact information to Plaintiff's counsel.

**IT IS FURTHER ORDERED** that Plaintiff's request to toll the statute of limitations is **DENIED WITHOUT PREJUDICE** as premature, to be reurged if necessary once the parties develop a sufficient evidentiary record within applicable discovery deadlines.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Plaintiff Darrell Hobbs was a cable technician.[1] *See* Rec. Docs. 1 ¶ 21; 17-4 ¶ 2. Hobbs installed and repaired telephone, television, and internet services for customers of Charter

---

[1] Since this lawsuit began, two other cable technicians, Eric Ewens and Charles Mullings, have consented to become party plaintiffs. *See* Rec. Docs. 6; 16; *see also* 29 U.S.C. § 216(b).

2

Communications (Charter) from December 2016 to April 2017. *See* Rec. Docs. 1 ¶¶ 6, 21; 17-4 ¶ 2. Ten years prior, in 2007, Charter contracted (Charter contract) with Cable Marketing and Installation[2] (CMI) to provide cable technician services to Charter customers in Louisiana and Mississippi.[3] *See* Rec. Docs. 17-2 at 42; 20-1 at 2.

To this day, the Charter contract governs the work performed by the cable technicians. *See* Rec. Doc. 20-1 at 2. It dictates, among many other facets of the cable technicians' work, when technicians must be available to work, *id.* at 9, how technicians are assigned jobs via a cell phone application, *id.* at 46-48, how technicians interact with customers, *id.* at 47-48, how much Charter will pay for each type of job, *id.* at 59-68, and how to invoice Charter for completed jobs, *id.* at 13-15, 56. Even when CMI subcontracts the work, the subcontractor must agree to fully comply with the Charter contract. *See id.* at 18-19.

When CMI entered into the Charter contract in 2007, CMI employed some technicians directly, but also subcontracted some work to other companies. *See* Rec. Doc. 20-1 at 2. One of those companies was M&M Broadband Services, LLC (M&M Broadband), which signed a subcontractor agreement with CMI in October 2013. *See id.*

---

[2] There are two Defendants: (1) Cable Marketing and Installation of Louisiana and (2) Cable Marketing & Installations, Inc.
[3] The contract between Charter and CMI also states that CMI may perform work in Tennessee. *See* Rec. Doc. 17-2 at 42.

at 3, 5-10. The contract encompasses installation and repair work for various unnamed cable companies. *See id.* at 5. The exact job description is expected to "change[] from time to time based on [CMI's] contracts." *Id.* The contract states that M&M Broadband is an independent contractor, not an employee. *See id.* at 7.

In April 2016, CMI stopped employing its own cable technicians; since that time, all installation and repair work has been performed by M&M Broadband pursuant to the October 2013 subcontractor agreement. *See id.* at 3. To meet its obligations to CMI and Charter, M&M Broadband executed subcontractor agreements with Eric Ewens and Ross Broadband Technologies (Ross Broadband). *See* Rec. Docs. 20-2; 20-7. In turn, Ross Broadband executed an independent contractor agreement with Hobbs. *See* Rec. Doc. 20-8 at 12-22. These contracts also state that the cable technicians are independent contractors, not employees. *See* Rec. Docs. 20-2 at 4; 20-7 at 4; 20-8 at 12. The cable technicians did not sign contracts with CMI directly, but nor were they entirely separate from CMI. Technicians wore shirts with the CMI logo, reported to a building with the CMI logo, used badges marked with CMI's name and address, and received forms bearing the CMI logo or address. *See* Rec. Doc. 21-1 at 2-13.

Hobbs states in his affidavit that he and his fellow cable technicians regularly worked over forty hours per week, were not paid overtime, and sometimes even earned less than minimum wage.

4

*See* Rec. Doc. 17-4 ¶¶ 3-12. Cable technicians are paid piece rate, which means that they receive a certain amount of money per job completed. *See id.* ¶¶ 9-10. When a technician's work falls below the standards in the Charter contract, that technician could be retroactively assessed a "charge back," further reducing the technician's per hour wage. *See id.* ¶ 8. As a result, Hobbs brought suit against CMI under the federal Fair Labor Standards Act (FLSA) and a Louisiana statute that prohibits employers from assessing fines against employees. *See* Rec. Doc. 1 ¶¶ 66-94. Hobbs now seeks conditional certification of a collective action to pursue the FLSA claims on behalf of himself and other cable technicians whom CMI classified as independent contractors. *See* Rec. Doc. 17.

## **LAW AND ANALYSIS**

The FLSA requires an employer to pay an employee no less than minimum wage for the first forty hours the employee works each week. *See* 29 U.S.C. § 206. The employer is also required to pay the employee no less than one and one-half times the minimum wage for any additional hours worked each week. *See id.* § 207. A plaintiff can seek redress for violations of the FLSA on behalf of himself and "other employees similarly situated" by initiating a collective action. *Id.* § 216(b).

A plaintiff who files a collective action under the FLSA must survive "a two-stage certification process." *Portillo v. Permanent Workers, LLC*, 662 F. App'x 277, 280 (5th Cir. 2016). At the first

5

step, the plaintiff moves for conditional certification, which requires the "district court . . . [to] decide[], usually based on the pleadings and affidavits of the parties, whether to provide notice to fellow employees who may be similarly situated to the named plaintiff." *Id.* (citing *Sandoz v. Cingular Wireless LLC*, 553 F.3d 913, 915 n.2 (5th Cir. 2008)). At the second step, which occurs after discovery, the defendant moves for decertification, and the district court is required to decide whether similarly situated employees have actually joined the lawsuit. *See id.* at 280-81 (citing *Sandoz*, 553 F.3d at 915 n.2).

The instant matter is at the first stage; Plaintiff Darrell Hobbs seeks to conditionally certify a collective FLSA action on behalf of himself and similarly situated cable technicians. *See* Rec. Doc. 17. "Because the court has minimal evidence [at the first stage], th[e] [similarly situated] determination is made using a fairly lenient standard, and typically results in conditional certification." *Mooney v. Aramco Servs. Co.*, 54 F.3d 1207, 1214 (5th Cir. 1995). Though "unsupported factual assertions" will not suffice, *Lima v. Int'l Catastrophe Sols., Inc.*, 493 F. Supp. 2d 793, 798 (E.D. La. 2007), a plaintiff must present "nothing more than substantial allegations that the [potential opt-in plaintiffs] were together the victim of a single decision, policy, or plan," *Mooney*, 54 F.3d at 1214 n.8. Courts analyze similarity

with respect to "job requirements and with regard to pay provisions." *Lima*, 493 F. Supp. 2d at 798.

Plaintiff proposes a collective comprised of "[a]ll individuals . . . employed by [CMI] as cable installers/repairmen" . . . since May 8, 2014, "who were classified as independent contractors."[4] Rec. Doc. 1 ¶ 69. Therefore, the question at hand is whether technicians who performed jobs for CMI while classified as independent contractors are similarly situated. Analogous collectives have previously been conditionally certified. *See White v. Integrated Elec. Techs., Inc.*, No. 11-2186, 2013 WL 2903070, at *5-6 (E.D. La. June 13, 2013)(conditionally certifying collective of satellite television technicians, some of whom were classified as independent contractors, who were paid piece rate); *Lang v. DirecTV, Inc.*, No 10-1085, 2011 WL 6934607, at *7-8 (E.D. La. Dec. 30. 2011)(same); *see also Gremillion v. Cox Commc'ns La.*, No. 16-9849, 2017 WL 2688217, at *3 (E.D. La. June 22, 2017) (conditionally certifying collective of cable technicians who were

---

[4] In its motion for conditional certification, Plaintiff attempts to expand the collective to include technicians who were classified as employees by CMI. *See* Rec. Doc. 17-1 at 5-6. Setting aside the fact that Plaintiff's request would encompass relief not originally sought in Plaintiff's complaint, *see* Rec. Doc. 1 ¶ 69, Plaintiff provides no evidence about the hours worked or pay received by technicians whom CMI classified as employees. The only affidavits are from Darrell Hobbs and Eric Ewens; both were classified as independent contractors. *See* Rec. Docs. 17-3; 17-4; 20-2; 20-7; 20-8. While technicians classified as employees were governed by the same contract between CMI and Charter, that fact alone does not offer information about how many hours those technicians worked per week or how much those technicians were paid per hour worked. *See* Rec. Doc. 17-2 at 9-68. Therefore, the Court will proceed based on the collective as originally defined in the complaint.

7

paid based on a point system similar to piece rate); *Lima*, 493 F. Supp. 2d at 798-800 (conditionally certifying collective of independent contractors who were paid flat rate for hours worked in excess of forty hours per week).

The affidavits filed by Hobbs and Ewens, as well as the complaint, state that CMI's classification of technicians as independent contractors created a situation in which technicians worked long hours, but were not paid overtime and were sometimes paid less than minimum wage because the technicians' paychecks were based on piece rate calculations. *See* Rec. Docs. 17-3; 17-4. The affidavits explain that technicians were scheduled for twelve hour shifts, six days per week, and would receive job assignments via an application accessible on technicians' cell phones. *See* Rec. Docs. 17-3; 17-4. The affidavits also explain that technicians documented the number of jobs they completed at the end of each workday and were paid on a weekly basis. *See* Rec. Docs. 17-3; 17-4. Each weekly paycheck was calculated on a piece rate basis by multiplying the number of jobs completed by the rate for each job. *See* Rec. Docs. 17-3; 17-4. Deductions for substandard work were sometimes assessed in the form of "back charges." *See* Rec. Docs. 17-3; 17-4.

The contracts governing the technicians' work support the statements in the affidavits and complaint. The Charter contract, which ultimately governs all work by technicians, confirms that

technicians are scheduled to receive jobs through a cell phone application, *see* Rec. Doc. 17-2 at 46-48, 56-57, that technicians can be "charged back" for certain substandard work, *see id.* at 57-58, that records of completed jobs are submitted on a daily basis, *see id.* at 13-14, and that payment is calculated per completed job, *see id.* at 13, 59-68.[5] Defendants confirm that CMI pays M&M Broadband for completed jobs on a weekly basis. *See* Rec. Doc. 20-1 at 4.

The affidavits and documentary evidence establish that all technicians performed the same type of work, all pursuant to the Charter contract. The Charter contract governed the type of work technicians would perform, how they would complete each job, and how much they would be paid for each job. *See Lima*, 493 F. Supp. 2d at 798 (discussing the importance of "job requirements" and "pay provisions" when deciding whether to grant conditional certification). Admittedly, technicians were almost certainly not paid the per job rate specified in the Charter contract given that the payments passed through CMI and M&M Broadband before reaching the individual technicians. But the Charter contract still provided a universal ceiling for payments. Therefore, Plaintiff has provided sufficient evidence that technicians classified as

---

[5] Plaintiffs also provide payroll and scheduling records that are consistent with their allegations that technicians reported completed jobs on a daily basis and received payment on a weekly basis, all using standard job codes from the Charter contract. *See* Rec. Docs. 20-9 at 2; 21-4 at 5.

independent contractors are similarly situated, which merits conditional certification of a FLSA collective action and notification of potential opt-in plaintiffs. *See White*, 2013 WL 2903070, at *5-6; *Lima*, 493 F. Supp. 2d at 798-99.

Defendants' only argument against granting conditional certification is that Plaintiffs are not protected by the FLSA because they are independent contractors, not CMI employees. *See* Rec. Doc. 20 at 7-17. When determining whether a worker is an employee or independent contractor, courts employ the "economic reality" test and weigh four factors: (1) whether the company had "the power to hire and fire," (2) whether the company "supervised and controlled . . . work schedules or conditions of employment," (3) whether the company "determined the rate and method of payment," and (4) whether the company "maintained employment records." *Gray v. Powers*, 673 F.3d 352, 354-55 (5th Cir. 2012). But, at the conditional certification stage, courts do not fully resolve the question of whether plaintiffs are employees or independent contractors. *See, e.g.*, *White*, 2013 WL 2903070, at *5-6 (citing *Lang v. DirecTV, Inc.*, No. 10-1085, 2011 WL 6934607, at *3 (E.D. La. Dec. 30, 2011)). Instead, courts assess whether plaintiffs are similarly situated with respect to the economic reality test factors. *See id.* at *3 (citing *Lang*, 2011 WL 6934607, at *3); *Cruz v. ConocoPhillips*, 208 F. Supp. 3d 811, 817-18 (S.D.

Tex. 2016) (citing *Christianson v. NewPark Drilling Fluids, LLC*, No. 14-3235, 2015 WL 1268259, at *3-4 (S.D. Tex. Mar. 19, 2015)).

Here too, Plaintiffs offer sufficient evidence that they are similarly situated vis-a-vis the economic realities test. All technicians worked under a subcontractor agreement between CMI and M&M Broadband. *See* Rec. Doc. 20-1 at 3. While the agreement dutifully recites that M&M Broadband is an independent contractor with the sole power to hire and fire, the contract also states that M&M Broadband "will employ only such employees as [CMI] deems competent and, upon request of [CMI], will dismiss from the work such employees it may deem incompetent, careless, insubordinate, or inimical to the public interest." Rec. Doc. 20-1 at 7. This language indicates that CMI has some authority over the hiring and firing of individual technicians, and that the authority is common to all technicians.

Second, there is ample evidence in the record that CMI exerted control over technicians' working conditions. Technicians' shirts bear the CMI logo. *See* Rec. Doc. 21-4 at 7. The Charter contract, which CMI requires M&M and technicians to comply with, states that "full crews" must be available to work eight hours per day, Monday through Friday. *See* Rec. Doc. 17-2 at 9. Charter reserves the right to compel technicians to work "after regular hours." *Id*. All technicians must also follow a detailed Scope of Work agreement, which governs all aspects of technicians' work, from how the

technicians speak to customers to how technicians perform each type of job. *See id.* at 39-68. In turn, CMI is required to document their subcontractors' agreement to comply with these requirements. *See id.* at 19.

Third, Plaintiff offers evidence that all technicians are paid piece rate for the jobs they complete. *See* Rec. Docs. 17-2 at 56-57, 59-68; 17-3 at 2; 17-4 at 2; 20-9 at 2. While Plaintiffs have not provided evidence that CMI directly set the per job rates paid to technicians, there is evidence that CMI effectively established a cap on technician compensation by passing payment for technicians' work through to M&M Broadband. *See* Rec. Doc. 20-1 at 4. Also, Plaintiff included a back charge sheet for Hobbs that bears the CMI logo, throwing into doubt CMI's assertion that it does not assess back charges to individual technicians. *See* Rec. Doc. 21-4 at 2.

Fourth, Plaintiff offers evidence that CMI maintains some records about technicians, the work they completed, and the payments they received. *See* Rec. Doc. 21-4 at 2 (back charge sheet bearing CMI logo), 5 (daily job log bearing CMI address), 13-14 (technician badge bearing CMI name and address). CMI states that it pays M&M Broadband "on a weekly basis for all work performed," which implies that CMI had some record of the jobs completed by technicians each week. Rec. Doc. 20-1 at 4. Moreover, in its opposition to Plaintiff's motion for conditional certification,

CMI states that it has logs of work performed by technicians. *See* Rec. Doc. 20 at 20.

The evidence available at this early stage of proceedings indicates that technicians who performed work for CMI while classified as independent contractors are similarly situated with respect to job requirements, pay provisions, and the economic reality test. Therefore, the collective is conditionally certified as: All individuals who provided cable repair and installation services for Cable Marketing and Installation of Louisiana, Inc. or Cable Marketing & Installations, Inc. at any time since February 6, 2015, and who were classified as independent contractors.[6] *See* Rec. Doc. 1 at 6.

Having found that conditional certification of the collective is appropriate, the next step is to address the parties' disagreements about when and how to notify potential opt-in plaintiffs. Plaintiff's counsel needs contact information for

---

[6] Plaintiff argues that the collective should begin on May 8, 2014, three years before the complaint was filed. *See* Rec. Doc. 1 at 6. There is some authority for a May 2014 start date. *See White*, 2013 WL 2903070, at *10. However, given that the statute of limitations for opt-in plaintiffs runs from the date when they consent to join the action, it is more appropriate to base the collective's start date on the date when the district court grants conditional certification. *See Gremillion*, 2017 WL 2688217, at *5-6 (explaining that the "earliest appropriate trigger date for calculating the notice period is the date of this Court's ruling, not the date the lawsuit was filed," because otherwise the notice will be sent to potential opt-in plaintiffs whose claims have expired); *cf. White*, 2013 WL 2903070, at *10 (citing cases in which the notice period was calculated using the date when the order granting conditional certification was granted). As discussed more fully elsewhere in this Order and Reasons, a three year look back is appropriate at the conditional certification stage because the ultimate duration of the statute of limitations turns on a willfulness determination that is inappropriate to make without a more developed record. *See Lima*, 493 F. Supp. 2d at 802-03.

13

potential opt-in plaintiffs to provide notice. Plaintiff asks that Defendants provide that contact information within fourteen days. Defendants argue that they need thirty days to prepare the information because analyzing their records is a manual task and they only have two employees. Defendants' request is reasonable and consistent with other collective actions involving workers who were classified as independent contractors. *See Lima*, 493 F. Supp. 2d at 800; *Gremillion*, 2017 WL 2688217, at *8. Once notice has been distributed, Plaintiff propose a sixty day opt-in period. *See* Rec. Doc. 17-1 at 9. Defendants do not object. Therefore, Defendants shall provide contact information to Plaintiff's counsel within thirty days of this Order and Reasons being signed. Potential opt-in plaintiffs will have sixty days to join the proceedings, a period of time starting on the date when Defendants provide contact information to Plaintiff's counsel.

With regard to the notice itself, the parties have not yet agreed on its content, *see* Rec. Doc. 21-2 at 9, and disagree about how to distribute the notice, *see* Rec. Doc. 20 at 18-19. Because the parties have not agreed on a notice and none has been provided for review, the parties shall submit a proposed notice, along with any objections, within fifteen days of this Order and Reasons being signed.

Plaintiff asks to distribute the notice via mail, e-mail, and text message. *See* Rec. Doc. 17-1 at 7. Plaintiff also asks that

Defendants post the notice at their offices. *See id.* at 8. Defendants have no objection to notification via mail and e-mail. But the parties have not fully agreed on notification via text message and posting notice at Defendants' offices. *See* Rec. Doc. 20 at 19.

Turning first to the question of notification by text message, Plaintiffs request that the text message notice be an abbreviated plain text version of the full notice. *See* Rec. Doc. 17-1 at 8. Defendants object to this request and argue that the text message notice should be the full notice, sent as an image. *See* Rec. Doc. 20 at 19. Plaintiffs subsequently proposed a compromise of sending a plain text summary of the notice and a link to the full notice. *See* Rec. Doc. 24 at 9. This compromise seems highly reasonable given that not all people have phones capable of receiving images via text message. Moreover, an image of a notice formatted to be read on a letter-sized piece of paper may be difficult to read on a phone screen. However, Plaintiff's counsel bears the burden of answering any technical questions necessary for sending notice via text message. The parties shall submit for review a proposed abbreviated text message notice, along with any objections, within fifteen days of this Order and Reasons being signed.

Turning next to the question of physically posting the notice at Defendants' offices, Defendants claim to only have one office in Mississippi and none in Louisiana. *See id.* But Plaintiff has

provided evidence that suggests Defendants may have other physical locations in Louisiana and Mississippi. *See* Rec. Doc. 21-4 at 9-10, 15, 17, 23-24. Given the discrepancy between Defendants' opposition memorandum and the evidence provided by Plaintiff, Defendants shall post the notice in their Mississippi office, *see* Rec. Doc. 20 at 19, and any other locations that bear the indicia of being a CMI facility—such as buildings that bear the CMI logo or offices listed on CMI's website. If Defendants cannot post the notice at the facilities identified by Plaintiff, Defendants can seek relief from this provision by filing a motion explaining why Defendants lack access to buildings emblazoned with the CMI logo and listed on the CMI website as CMI offices.

Finally, Plaintiff requests that the statute of limitations be tolled from the date the complaint was filed until the date each Plaintiff joins the lawsuit. *See* Rec. Doc. 17-1 at 9-10. Ultimately, whether the statute of limitations is two years or three years depends on whether the defendant's FLSA violations were willful. *See Lima*, 493 F. Supp. 2d at 802-03. Given their fact-bound nature, questions about tolling the statute of limitations in a FLSA collective action are premature at the

conditional certification stage. *See Lima*, 493 F. Supp. 2d at 802-04; *see also Gremillion*, 2017 WL 2688217, at *5-7. Therefore, the issue is best reurged at a later date when the parties have developed a more complete record.

New Orleans, Louisiana, this 6th day of February, 2018.

_____
SENIOR UNITED STATES DISTRICT JUDGE